[No. 1503.]

Patricio Charles *v.* The State.

1. Jury Law—Service of Special Venire.—Article 613 of the Code of Criminal Procedure provides: "The sheriff or other officer executing the writ shall summon the persons whose names are upon the lists attached to the writ, which summons shall be made verbally upon the jurors in person."

2. Same—Official Return.—Article 614 of the Code of Criminal Procedure provides that, "the officer executing the writ shall return the same promptly on or before the time it is made returnable. The return shall state the names of those who have been summoned; and, if any of those whose names are upon the list have not been summoned, the return shall state the diligence that has been used to summon them, and the cause of the failure to summon them."

3. Same—Practice in this Court.—While these articles of the Code of Criminal Procedure should be observed by the trial court to that extent that a defendant upon trial is protected in his every right, a slight disregard of their provisions will not necessarily be held cause for reversal. The organization of a jury so as to secure a fair and impartial trial is, to a certain extent, committed to the discretion of the trial court, and this court will presume that the trial court discharged its duty, in the absence of a showing of the abuse of discretion, to the injury of the defendant. See the opinion *in extenso* for circumstances under which the court below did not err in overruling a motion to quash a special *venire.*

4. Murder.—Verdict in a murder case reads: "We the jury find the defendant, Patricio Charles, guilty of murder in the second degree, and assess his punishment at confinement in the State penitentiary for the term of fifty years." Held, a sufficient verdict.

5. Same—Fact Case.—See evidence *held* sufficient to support a conviction for murder of the second degree.

6. Same—Charge of the Court.—See the statement of the case for a charge of the court relating to the question of drunkenness held consistent with the provisions of the statute on that question.

APPEAL from the District Court of Webb. Tried below before the Hon. J. C. Russell.

The appellant was indicted for the murder of Lewis Meyers, on or about the thirtieth day of June, A. D. 1882. The indictment charges murder by shooting with a pistol with express malice aforethought. He appeals from a conviction of murder in the second degree, wherein the verdict assessed the punishment at fifty years in the penitentiary.

Domingo Villareal testified, for the State, that he knew the defendant, and was acquainted with Lewis Meyers in his lifetime. Meyers was killed by the defendant in June, 1882, at El Pico ranch, in Webb county, Texas. The defendant shot the deceased while the deceased was sitting on a box in a house of which the witness did not know the owner. The weapon used was a pistol. The ball struck the deceased somewhere in the breast. The defendant had been drinking with a man named Inez. The witness did not know where Inez was at the time of this trial. The deceased had beer and other things to sell. The defendant had his revolver strapped around him when he entered the house and called for beer. He drank for a good while and then asked the deceased if the beer had been paid for. He then left the room and went out to where Inez was, and presently returned and told the deceased that the beer had been paid for. He then struck the counter twice with the handle of his pistol, the muzzle pointing up. The deceased then told him to put up the pistol, as it might go off. The defendant then struck the counter flat with the side of the pistol. The witness then heard the pistol discharged, after which the defendant turned his pistol and fired a second time in another direction.

On his cross-examination the witness stated that the defendant went to Meyers's place about seven o'clock in the morning. The shooting took place at about ten o'clock in the morning. The defendant had been drinking beer from the time he went to the Meyers place until the shooting took place. The beer was in quart bottles, and the defendant alone drank about eight of them. There was no trouble between the defendant and Meyers, nor did they have any kind of a dispute. The defendant struck the counter several times with the pistol, at one of which times it was discharged. He did not point it at the deceased. The two shots were fired very near together. The defendant was very drunk. When the defendant took out his pistol he said

nothing. When the deceased told him to put up the pistol, he lowered it to his side, and then, raising it to a level with the deceased and pointing towards the deceased, he said: "I will put it up when I please." It was then that the pistol was discharged. It was the first of the two shots which struck the deceased.

Lasero Garza testified, for the State, that he knew the defendant by sight, and he was acquainted with the deceased Meyers, who was killed by the defendant at the "Ranch of the Flowers." The witness and Domingo Villareal were invited by the defendant to accompany him to the store of the deceased, which they did. The defendant proposed that the party should drink. The defendant himself drank beer until he was very drunk, and then pulled out his pistol and struck the counter with the handle first and then with the side of the pistol. The pistol was discharged while it was pointing towards Meyers, and the latter fell. Thereupon the witness and Domingo secured the defendant. The defendant said something when the shot fired, but he was so drunk that the witness could not understand him. One shot was fired towards the deceased as the defendant struck the counter with the pistol. The other shot was fired in an opposite direction. It was a forty-four calibre brass cartridge Colt's pistol, with a wooden handle, that the defendant used. It was nickel-plated.

A. Bruni testified, for the State, that he went to the store and found Meyers lying behind his counter, dead. He found the defendant tied down at a ranch about five miles from the store. There were two marks on the counter, showing that they were made with the handle of a pistol. The witness took the revolver used by the defendant and tried it, and found that the handle exactly fitted into the dents. In thus fitting it, its position forced the muzzle of the pistol upwards. The defendant was very drunk when the witness found him.

The witness also found where the second shot struck. It was on a line with and beyond the body of the deceased from the point where the defendant was said to have been standing. The marks on the counter could only have been made as indicated.

The charge of the court on the subject of drunkenness, which is held by this court to be consistent with statutory provisions, is the subject of the ninth subdivision of the general charge, and reads as follows:

"You are further charged that intoxication produced by the voluntary recent use of ardent spirits constitutes no excuse for

the commission of crime; nor does intoxication mitigate either the degree or the penalty of crime. However, in a case where the defendant is accused of murder, as in the case before you, you may take into consideration the mental condition of the defendant for the purpose of determining the degree of murder, if you should find the defendant guilty of murder under the evidence of this case and the foregoing instructions."

The motion for new trial sets up that the court erred as follows:

1. In overruling the motion to quash the *venire.*

2. In not setting the verdict aside as informal.

3. In not setting it aside for the want of evidence to establish malice aforethought, express or implied.

4. In not setting it aside as unsupported by the evidence.

5. In the substance of the general charge.

6. In refusing charges asked.

*C. A. McLane,* for the appellant.    The verdict reads as follows:

"We, the jury, find the defendant, Patricio Charles, guilty of murder in the second degree, and assess his punishment at confinement in the State penitentiary for the term of fifty years.
                    "GEO. W. WOODMAN, Foreman."

To merely show the form of the verdict is to argue its nullity. Article 22, Code of Criminal Procedure, declares that "No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded."

Article 713, same Code, provides that "Where a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree (naming it), but guilty of any degree inferior to that charged in the indictment or information."

Article 714, following, places murder within the category of offenses which include lesser degrees. Articles 715 and 716 point out in mandatory tones the duty of the court and jury in respect to informal verdicts.

Now, permit me that I ask your honors, has the appellant been convicted upon a verdict of a jury duly rendered? In *Wooldridge* v. *The State,* decided at the present term, it is held that the verdict of the jury was a nullity, because in finding the defendant guilty of murder in the first degree, the letter "r"

in the word "first" was omitted, leaving it "fist degree" instead of "first degree." It is a subject of remark that the honorable court, in its elaborate and exhaustive opinion in this case, soars high above the popular clamor for an ensanguined sacrifice in the name of justice. Proud is the glow in the heart of the citizen that his life and his liberty is protected by a tribunal of last resort who dares administer the law as it is !

In *Slaughter* v. *The State*, 24 Texas, 410, it is decided that "on an indictment for an offense divided into different degrees, a general verdict of guilty, assessing a penalty applicable only to one of the inferior degrees, and which does not find the defendant not guilty of the higher degrees, is insufficient to support a judgment of conviction; and is ground to arrest the judgment. Such an informality in the verdict is the proper subject of correction, with the consent of the jury; and if they refuse to make it they should again retire." (See also 2 Texas Ct. App., 204; 32 Texas, 476.)

It might be urged with some degree of plausibility that so long as appellant is acquitted of murder in the higher degree, and the vital spark in him is still permitted to burn, that he ought not to be heard to complain of that which is to his benefit. Nor ought he, aside from all question as to the sufficiency of the evidence, if his conviction is had, and he is deprived of his liberty alone, by due course of the law of the land. (Bill of Rights, sec. 19.)

Independent of every other consideration, appellant demands, if convicted he is to be, that it shall be according to the law of the land. Let me ask, Does not that law, in express and positive terms, require the verdict to acquit of the higher degree, naming it? "Oh!" but it might be said, "this is merely a question of practice, not touching the merits of the case nor materially affecting the rights of the defendant." Ah ! but that very practice has for its sole object the defining, establishing and maintaining of those very rights. Practice, forsooth ! Call it practice, and every invasion of sacred right—every encroachment upon the inestimable privileges of the citizen—becomes legitimized confiscation ! Out upon the insidious phrase ! There must be a stopping point somewhere. If practice is not law, then what is it? If it be law, then it must be obeyed .to the letter as well as in the spirit.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, J.   Defendant was convicted of murder in the second degree, and his punishment was assessed at fifty years confinement in the penitentiary.

Defendant moved to quash and set aside the special venire and return thereof for the reason that the entire venire of sixty men had not been summoned, and because no sufficient diligence was shown in the sheriff's return why the jurors mentioned in the motion to quash were not summoned.   Article 613 of the Code of Criminal Procedure provides:   "The sheriff or other officer executing the writ shall summon the persons whose names are upon the lists attached to the writ, which summons shall be made verbally upon the jurors in person;" and Article 614 provides for the officer's return as follows:   "The officer executing the writ shall return the same promptly on or before the time it is made returnable.   The return shall state the names of those who have been summoned; and if any of those whose names are upon the list have not been summoned, the return shall state the diligence that has been used to summon them, and the cause of the failure to summon them."

In the case before us thirty-six of the sixty persons named in the venire were summoned, leaving twenty-four not summoned. Fourteen of those not summoned are shown to have been absent from the county at the time.   One was shown to have been dead.   Some of the remaining nine, although residing in the county, could not be found after due diligence used, and some of them resided at such great distances from the county site that they could not be served for want of time.

While we regard the articles of the code which we have quoted as wise provisions of law, and safeguards against that great evil popularly known as "stocked juries," still we do not think a slight disregard of their provisions would be sufficient *per se* to warrant the setting aside of a verdict of conviction.   It is the duty of the trial judge to see that these provisions are substantially observed, and he should, in all cases where they are applicable, be careful to enforce them with such strictness as to certainly accomplish their purpose, which is to secure an impartial jury for the trial of the cause.   This court, in the absence of a showing to the contrary, will presume that the trial judge in this important matter has discharged his duty.   If, however, a case should come before us wherein it was made to appear that this discretion confided by law to the trial judge had been abused, whereby the defendant had probably been injured in his

rights, we would not hesitate to set aside the conviction and award him a new trial.

In this case it does not appear that the trial judge committed any error in overruling the motion to quash the venire, nor that any right of the defendant was prejudiced thereby. For aught that appears from the record the jury that tried the case was composed of men selected from the thirty-six summoned jurors. If so, the defendant certainly cannot complain that he was injured by the ruling of the court upon his motion. It is not shown that the defendant, by reason of the ruling of the court, was compelled to pass upon talesmen jurors, or to accept any objectionable juror, or in any other manner suffer injury by reason of the overruling of his motion. Furthermore, we think the return of the sheriff upon the venire shows good reason why fifteen of the jurors were not served, and, if the return as to the remaining nine not served be true, it is also sufficient as to them; and we must presume, in the absence of contradiction, that the officer made a truthful return.

It would have been more strictly in compliance with the law if the officer, instead of stating in his return that he had used due diligence to serve these jurors, had stated the facts which constituted the diligence, so as to enable the court to determine whether or not due diligence had in fact been used. In the manner in which the question is presented to us, we cannot say that the court erred in overruling the defendant's motion to quash the venire, nor if we were to hold that this action of the court was error, would we be justified in further holding, upon the facts presented in the record, that it was that character of error which would vitiate the conviction.

As to the objection made to the sufficiency of the verdict, the same question was elaborately discussed and decisively determined by this court in *Lopez* v. *The State*, 2 Texas Court of Appeals, 204, in which a precisely similar verdict was held to be sufficient; and we approve and reaffirm that decision.

In response to the several assignments of error relating to the charge of the court, and the refusal of the court to give special charges requested by defendant's counsel, we will say that after careful examination we find no error in the charge of the court as given, nor in the refusal of the court to give the special charges requested. We think the charge of the court presented all the law applicable to the facts of the case, and presented it correctly. That portion of the charge relating to the drunken-

ness of the defendant at the time of the homicide was in accordance with the statute on that subject. (Acts Seventeenth Leg., chap. 14, p. 9.)

There was sufficient evidence, we think, to support the verdict. The judgment is affirmed.

*Affirmed.*

Opinion delivered March 22, 1883.